UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


ANTHONY COOPER,

       Petitioner,                               Case No. 06-11068
                                                              Honorable Denise Page Hood

v.


BLAINE LAFLER,

       Respondent.
_____/

## OPINION AND ORDER CONDITIONALLY GRANTING
## PETITION FOR WRIT OF HABEAS CORPUS

**I.    INTRODUCTION**

Petitioner Anthony Cooper ("Petitioner"), a state inmate currently imprisoned at the Oaks Correctional Facility in Manistee, Michigan, through counsel, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, asserting that he is being held in violation of his constitutional rights. Petitioner was convicted of (1) assault with intent to murder, MICH.COMP.LAWS § 750.83, (2) possession of a firearm by a felon, MICH.COMP.LAWS § 750.224f, (3) felony firearm, MICH.COMP.LAWS § 750.227b, and, (4) possession of marijuana, MICH.COMP.LAWS § 333.7403(2)(d). Following his convictions, Petitioner was sentenced by the trial court to (1) 185 to 360 months imprisonment for the assault-with-intent-to-murder conviction, (2) one to five years imprisonment for the felon-in-possession conviction, and, (3) two years imprisonment for the felony-firearm conviction. Petitioner received a suspended sentence for the marijuana conviction. For the reasons stated below, the Court conditionally

grants Petitioner's petition for writ of habeas corpus.

## II.    STATEMENT OF FACTS

This case arises out of an incident that occurred on March 25, 2003, in Detroit, Michigan. On that particular day, at about 7:00 p.m., Kali Mundy drove to an apartment building on the corner of Schoolcraft and Glastonbury Streets in Detroit, Michigan.  Ms. Mundy went to that apartment building in order to visit Robert Smith, a man whom she knew as "Pumpkin."  Ms. Mundy wanted to ask Mr. Smith about some problems that had occurred earlier that day at a McDonalds' franchise in Dearborn, Michigan.  Ms. Mundy previously suggested that Mr. Smith apply for a job at that McDonalds, but subsequently discovered that he had an altercation with a cashier and a manager.  According to Ms. Mundy's testimony, she was informed by the employees that the altercation almost became a pushing match, so much so that they were contemplating calling the police but did not.

As a result, Ms. Mundy decided to go to Mr. Smith's apartment to find out what had actually occurred.  According to Ms. Mundy's testimony, when she knocked on his door, it was his girlfriend, not Mr. Smith, who came to the door.  Following a quick conversation with the girlfriend, Ms. Mundy left and went outside to use a payphone.  After using the phone, Ms. Mundy went to her car, but as she was getting into her car, she saw a red Ford Explorer pull up to the complex.  Ms. Mundy believed that Mr. Smith was in the car.

As Ms. Mundy was getting out of her car, she saw Petitioner, whom she recognized from the neighborhood, get out of the Explorer.  Ms. Mundy said that as he was walking toward her, she saw him pull out a gun.  It was her testimony that he just started "shooting at me."  (Trial Tr. Vol. II, p. 142.)  According to Ms. Mundy's testimony, she then ran to a neighbor's house,

knocked on the door, and asked the neighbor to call the police.  Ms. Mundy had been shot in the abdomen and the back.

Officer Aubrey Sargent was first to arrive at the scene.  Officer Sargent testified that, when she arrived at the scene, she found that Ms. Mundy had been shot in the stomach and the back.  Officer Sargent said that Ms. Mundy gave her a description of the man who shot her.

Police Officer Randell Coleman, who was in the area securing the scene of an unrelated shooting, testified that, around 7:00 p.m. that evening, he heard some screams and some gunshots.  He said that he saw a man in a dark-hooded jacket running toward Schoolcraft Street.  Officer Coleman testified that he saw a muzzle flash from the handgun that the man carried.

Officer Lori Dillon and, her partner, Officer Demetrius Brown were also in the area.  They heard the gunshots and received a radio call from Officer Coleman, who indicated to them that the alleged suspect was running through an alley in which they were located.  Officer Dillon testified that she then pulled into the alley in front of the running man, whom she later identified as Petitioner.  Officer Dillon conducted a search of Petitioner and found two packets of marijuana on his person.  At the time of Petitioner's arrest, Officer Dillon testified that he was wearing a dark-hooded sweatshirt.  Officer Dillon also testified that she found four shell casings from an automatic weapon in the area around the apartment building; however, the gun was not found.

Dr. Ilan Rubenstein, the surgeon who treated Ms. Mundy testified that Ms. Mundy spent almost three weeks in the hospital for the treatment of her gunshot wounds.  It was also his testimony that she suffered potentially fatal injuries from the four gunshot wounds in her abdominal cavity; she sustained two bullets holes in her right buttock, one to the hip, and one to

the right side of her abdomen.  As a result of those injuries, Ms. Mundy sustained major damage to her small and large intestines, which had to be surgically repaired.  Although Ms. Mundy claimed that she suffered a miscarriage from the injuries that she received, the medical records did not demonstrate that she was pregnant at the time of the shooting.

Tava Simon, a witness for the defense, testified that Mr. Smith called her on the day in question and asked her if she could take him to a job interview.  Mr. Smith was at Petitioner's house at the time, which was down the street from where Ms. Simon worked.  Mr. Smith walked down to meet Ms. Simon and, according to her testimony, she took him, along with Petitioner and his friend Yolanda, to the McDonalds, where he was going for the interview.  While there, she became aware of a confrontation that occurred inside the McDonalds, between Mr. Smith and one of the female workers.  According to Ms. Simon, the female employee was threatening to strike Mr. Smith.  It was Ms. Simon's testimony that they subsequently left McDonalds to go to Mr. Smith's apartment.

According to Noel Pettawana, Mr. Smith's fiancé, Ms. Mundy came to her apartment, looking for him.  She testified that she ordered Ms. Mundy to leave the apartment; "[b]ecause of her intentions.  What I felt her intentions were.  I had children in the house." (Trial Tr. Vol. IV, p. 206.)  Subsequently, Ms. Pettawana called Ms. Simon, who was driving Mr. Smith, Petitioner, and Yolanda, and told her what had transpired at the apartment with Ms. Mundy.

A gunshot residue test was performed on Petitioner by Officer Eugene Fitzhugh of the Crime Scene Unit at the Sixth Police Precinct in Detroit, Michigan.  Petitioner's hands and face were analyzed.  Prior to performing the test, Officer Fitzhugh asked Petitioner some questions.  In response, Petitioner denied that he had possessed or had been in the vicinity of a fired gun.

Petitioner answered those questions at the police station following his arrest and placement in handcuffs. Officer Fitzhugh did not testify to any waiver of *Miranda* rights prior to the questioning.

William Steiner, a forensic chemist at the Detroit Crime Lab, tested the samples taken from Petitioner; all three samples tested positive for gunshot residue. Mr. Steiner testified that the residue remains for a few hours after a shooting and signifies that an individual either fired a gun, stood in close proximity to a fired gun, or handled a recently fired gun.

Petitioner did not testify.

At a pretrial conference held on May 16, 2003, the assistant prosecuting attorney offered a plea agreement to Petitioner regarding his assault-with-intent-to-murder conviction and his felony-firearm conviction, agreeing to dismiss the other two charges. Defense counsel requested a trial date, while he and the prosecutor agreed to continue negotiations.

At the final pretrial conference on July 17, 2003, the prosecutor offered another plea agreement of fifty-one to eighty-five months for the assault-with-intent-to-murder conviction, despite the fact that the guidelines called for eighty-one to one-hundred-and-thirty-five months. Defense counsel rejected the offer because he thought that the prosecutor could not prove assault-with-intent-to-murder at trial. In response, the prosecutor withdrew the offer. At the conclusion of the hearing, defense counsel stated that he had talked with Petitioner and that they were rejecting the offer; "I've talked to Mr. Cooper about what it is and what the offer was. I talked to him in the Wayne County Jail yesterday. We're just rejecting the offer." (Pre-trial Conference Tr., p. 5.)

Then, prior to jury selection, on the day of trial, a new prosecuting attorney extended

another plea agreement regarding the assault-with-intent-to-murder charge, which was within the guidelines of 126 to 210 months, with an additional two years for the felony-firearm charge. The agreement was such that the felon-in-possession and possession-of-marijuana charges, and the habitual offender, second, would be dismissed. Defense counsel rejected the plea. The case went to trial, and, the jury convicted Petitioner as charged.

Subsequently, Petitioner filed his appeal as of right in the Michigan Court of Appeals raising the following three issues:

> I. Defense counsel rendered ineffective assistance, under the state and federal constitutions, where he failed to convey the sentencing benefits of the plea offer to [Petitioner] and ignored his desire to plea guilty.
>
> II. Defense counsel rendered ineffective assistance, under the state and federal constitutions by failing to present a proper defense.
>
> III. Where no *Miranda* rights were provided, defense counsel's failure to move to suppress [Petitioner's] statement constituted ineffective assistance of counsel.

While his appeal was pending, in April 2004, Petitioner filed a motion for a new trial, and an evidentiary hearing was held in Wayne County Circuit Court, regarding defense counsel's effectiveness. The hearing addressed the plea-bargaining stage of Petitioner's defense.

At the hearing, defense counsel testified to the following: Defense counsel said that he received Ms. Mundy's medical records in this case prior to the pre-trial conference that was held on July 17, 2003. He said that, based on his review of those records, he felt that the information in the records could not support the claims of the complainant, nor did that information support the charge of assault-with-intent-to-murder, based on the nature of Ms. Mundy's injuries. According to defense counsel's testimony, he said that he expressed his view to Petitioner and

advised him that he "could successfully negotiate a plea under the amended charge of [assault-with-intent-to-do-great-bodily-harm-less-than-murder]." (*Ginther* Hearing Tr., p. 7.) Accordingly, defense counsel informed the trial court that Petitioner would not be pleading guilty to assault-with-intent-to-murder for fifty-one to eighty-five months.

During the *Ginther* hearing, defense counsel acknowledged that Petitioner did in fact express an interest in a plea agreement. However, it was defense counsel's opinion that he could get Petitioner "a more reasonable offer," later in the proceedings, from a different prosecuting attorney. Defense counsel did not request time to discuss that matter with Petitioner, rather, it was his testimony that he wanted to explore a plea offer after he reviewed the medical records more thoroughly.

Petitioner rejected the plea offer after defense counsel told him that he could get a better offer for the lesser charge of assault-with-intent-to-cause-great-bodily-harm. Defense counsel told Petitioner that he did not believe that the assault-with-intent-to-murder charge was colorable, in light of the medical records. At the hearing, defense counsel admitted that, in his experience, an offer at trial generally would not improve over a pre-trial offer. Defense counsel acknowledged that he discussed a self-defense claim with Petitioner but advised him that, given the facts, self-defense was not a meritorious claim.

At the *Ginther* hearing, Petitioner expressed, in two letters written to the trial judge, that he intended to plead guilty. However, he said that he rejected the offer of fifty-one to eighty-five months on the basis of defense counsel's advise; "[m]y lawyer told me that they couldn't find me guilty of the charge because the woman was shot below the waist." (*Ginther* hearing Tr., p. 31.) Rather, Petitioner testified that defense counsel told him that he could get a plea agreement for

7

great-bodily harm with guidelines of eighteen to eighty-four months.

It is Petitioner's position that defense counsel never informed him that a jury might find him guilty of assault-with-intent-to-murder, and that he could face two to three times the plea offered by the prosecution. Rather, Petitioner testified at the *Ginther* hearing that "[h]e told me that the prosecution couldn't prove his case because the person was shot below the waist and that's not attempted murder. It was [great-bodily] harm and that he was going to get me a plea bargain." (*Ginther* hearing Tr., p. 33.) It is Petitioner's position that he would have accepted the fifty-one to eighty-five months' offer, if counsel had explained that a jury would likely find him guilty of the assault-with-intent-to-murder charge. Petitioner said that he rejected the fifty-one to eighty-five-month offer because he came to court on the final pre-trial conference date, expecting the prosecution to offer him a plea bargain that would include eighteen to eighty-four months imprisonment.

Following arguments on the motion for a new trial, and the *Ginther* hearing on Petitioner's ineffective assistance of counsel claim, the trial court denied the motion.

On March 15, 2005, the Michigan Court of Appeals issued an unpublished *per curiam* opinion affirming Petitioner's convictions. *People v. Cooper*, No. 250583, 2005 WL 599740, 2005 Mich. App. Lexis 679 (Mich. Ct. App. Mar. 15, 2005) (*per curiam*). Petitioner then filed an application for leave to appeal that decision in the Michigan Supreme Court. The Michigan Supreme Court denied Petitioner's application on October 31, 2005. *People v. Cooper*, 474 Mich. 905, 705 N.W.2d 118 (2005) (table).

On March 13, 2006, Petitioner, through counsel, filed the pending petition for a writ of

habeas corpus, asserting that his constitutional rights were violated. Petitioner states the following:

> I. Trial counsel rendered incompetent advice during the plea bargaining process which denied [Petitioner] the effective assistance of counsel.

## III.    STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs this Court's habeas corpus review of state court decisions. Specifically, 28 U.S.C. § 2254(d) states in pertinent part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Under (d)(1), a federal court may grant a writ of habeas corpus under two different clauses, both of which provide two bases for relief. Under the "contrary to" clause, a federal court may grant habeas relief if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has decided on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000). The words "contrary to"

should be construed to mean "'diametrically different,' 'opposite in character or nature,' or 'mutually opposed.'" *Id.*

Under the "unreasonable application" clause, a federal court may grant habeas relief if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts. *Id.* at 407-08. Relief is also available under this clause if the state court decision either unreasonably extends or unreasonably refuses to extend a legal principle from Supreme Court precedent to a new context. *Id.* at 407; *Arnett v. Jackson*, 393 F.3d 681, 686 (6th Cir. 2005). The proper inquiry for the "unreasonable application" analysis is whether the state court decision was "objectively unreasonable" and not simply erroneous or incorrect. *Williams*, 529 U.S. at 407; *Lordi v. Ishee*, 384 F.3d 189, 195 (6th Cir. 2004).

In analyzing whether a state court decision is "contrary to" or an "unreasonable application" of clearly established Supreme Court precedent, a federal court may only look to the holdings, as opposed to dicta, of the Supreme Court's decisions as of the time of the relevant state-court decision. *Lockyer v. Andrade*, 538 U.S. 63, 71, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003); *Williams*, 529 U.S. at 412.

## IV.   ANALYSIS

### A.   Ineffective Assistance of Counsel Claim

Petitioner contends that he is entitled to habeas relief because trial counsel was ineffective. Specifically, Petitioner argues that counsel was constitutionally deficient during the plea-bargaining process. Petitioner claims that his attorney erroneously advised him to reject the State's offer of fifty-one to eighty-five-months sentence on the assault-with-intent-to-murder

charge, and that he relied on that recommendation and rejected the offer without competent advise from his attorney. Petitioner claims that trial counsel failed to fully inform him and that his rejection of the offer was not knowing or intelligent. Petitioner therefore is seeking specific performance of the plea offer.

To establish ineffective assistance of counsel, it must be shown that counsel's performance was deficient and that the deficient performance prejudiced the defense so as to render the trial unfair and the result unreliable. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

With respect to the performance prong of the *Strickland* test, a petitioner must identify acts that were "outside the wide range of professionally competent assistance," in order to prove deficient performance. *Strickland*, 466 U.S. at 690. The reviewing court's scrutiny of counsel's performance is highly deferential. *Id.* at 689. The court must recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.* at 690.

To satisfy the prejudice prong under *Strickland*, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome. *Id.* "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *McQueen v. Scroggy*, 99 F.3d 1302, 1311-12 (6th Cir. 1996) (quoting *Strickland*, 466 U.S. at 686).

11

In a guilty plea context, while the performance prong of the *Strickland* test remains the same, to establish prejudice the petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 58-59, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985). Similarly, where counsel gives erroneous advice that results in the petitioner going to trial, the issue is whether there is a reasonable probability that the petitioner would have pleaded guilty. *Magana v. Hofbauer*, 263 F.3d 542, 551-53 (6th Cir. 2001); *see also Guerrero v. United States*, 383 F.3d 409, 416-17 (6th Cir. 2004) (prejudice established by defendant's demonstrating a reasonable probability that if he had been notified of a plea offer, he would have accepted it). Counsel's failure to provide professional guidance to a defendant regarding his sentence exposure prior to rejecting a plea offer may satisfy both the performance and prejudice prongs of the *Strickland* test. *Smith v. United States*, 348 F.3d 545, 553-54 (6th Cir. 2003).

The Michigan Court of Appeals, the last court to issue a reasoned decision regarding this claim in this case, stated in pertinent part:

> Defendant raises several claims of ineffective assistance of counsel. The United States and Michigan Constitutions guarantee the right to effective assistance of counsel. US Const, Am VI; Const 1963, art 1, § 20. Effective assistance of counsel is presumed, and a defendant bears a heavy burden of proving otherwise. *People v. LeBlanc*, 465 Mich 575, 578; 640 NW2d 246 (2002). To establish ineffective assistance, the defendant must demonstrate that his counsel's performance fell below an objective standard of reasonableness and that counsel's representation so prejudiced the defendant that he was deprived of a fair trial. *People v. Pickens*, 446 Mich 298, 302-303; 521 NW2d 797 (1994). With respect to the prejudice aspect of the test, the defendant must demonstrate a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different, and that the attendant proceedings were fundamentally unfair and unreliable. *Id.* at 312, 326-327; *People v. Rodgers*, 248 Mich App

702, 714; 645 NW2d 294 (2001).

> Defendant challenges the trial court's finding after a *Ginther* hearing that defense counsel provided effective assistance to defendant during the plea bargaining process. He contends that defense counsel failed to convey the benefits of the plea offer to him and ignored his desire to plead guilty, and that these failures led him to reject a plea offer that he now wishes to accept. *However, the record shows that defendant knowingly and intelligently rejected two plea offers and chose to go to trial.* The record fails to support defendant's contentions that defense counsel's representation was ineffective because he rejected a defense based on claim of self-defense and because he did not obtain a more favorable plea bargain for defendant.

*Cooper*, No. 250583, 2005 WL 599740, slip op. at 1-2 (Emphasis added) (Footnote omitted.)

In this case, the Court finds that the Michigan Court of Appeals' decision unreasonably applied the standards set forth in *Strickland* and *Hill*, *supra*. First, the Michigan Court of Appeals mis-characterized the proper analytical framework by scrutinizing Petitioner's conduct as opposed to examining trial counsel's omissions. It stated: "*defendant knowingly and intelligently rejected two plea offers and chose to go to trial.*" *Cooper*, No. 250583, 2005 WL 599740, slip op. at 2 (Emphasis added). It then dismissed Petitioner's claim in a two-sentence analysis, without addressing the issue.

Rather, the question before the Michigan Court of Appeals was not the legitimacy of Petitioner's plea decision but the validity of trial counsel's underlying advice and whether that advice was objectively reasonable. The Michigan Court of Appeals made Petitioner's plea decision the centerpiece of its analysis. In so doing, the Michigan Court of Appeals unreasonably applied clearly established federal precedent. *Strickland*, 466 U.S. at 690 ("a court deciding an . . . ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case"); *Hill*, 474 U.S. at 56 ("[w]here . . . a defendant is

13

represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'").

Second, the Michigan Court of Appeals failed to consider any evidence from the post-conviction hearing on the question of counsel's ineffectiveness.  The records demonstrates that defense counsel stuck to a one-sided view of the case; he professed many times in open court that the state could not prove its case.  At the preliminary hearing, defense counsel stated, on three different occasions, "the evidence will show that there is insufficient evidence," "I believe that the Prosecution does not have the evidence to try to (sic) this case," and "I am fully prepared to prove that they do not have sufficient evidence."  (Preliminary Hearing Tr., p. 3; *Ginther* Hearing Tr., pp. 6-7, 10.)

According to defense counsel's testimony at the *Ginther* hearing, he told the trial judge that he believed that the prosecutor had no case because the victim's injuries simply did not support an assault-with-intent-to-murder charge.  (*Ginther* Hearing Tr., pp. 6, 13.)  That testimony corroborated Petitioner's statement that "my lawyer told me that they couldn't find me guilty . . . because the woman was shot below the waist."  (*Ginther* Hearing Tr., p. 31.)

During the *Ginther* hearing, defense counsel acknowledged that Petitioner was open to considering plea offers by the prosecution.  (*Ginther* Hearing Tr., p. 7.)  However, it was defense counsel's position that Petitioner should reject the plea for the following reasons: (1) the victim's injuries did not satisfy the necessary elements for the charge of assault-with-intent-to-murder; (2) the prosecutor's offer was unreasonable; and (3) defense counsel believed that he could negotiate a better plea to a lesser charge.  (*Ginther* Hearing Tr., pp. 6-8, 13-14.)  None of those

14

bases for counsel's advice withstands reason.

First, a jury could, and, in fact, did, in this case, believe that Ms. Mundy's potentially fatal injuries could support a charge of assault-with-intent-to-murder; the testimony revealed that Ms. Mundy was shot from behind–the bullets punctured her bowels, for which she had to have surgery and a hospital stay of about three weeks. Second, the prosecutor's offer of four to seven years was not unreasonable when compared with the possibility that Petitioner could have been sentenced to life imprisonment. And, finally, defense counsel's belief that he could negotiate a lesser charge was unreasonable in light of the facts that defense counsel himself admitted–"only in the rare case does the prosecutor's offer improve between the final conference and the start of trial." (*Ginther* Hearing Tr., pp. 18-19.) The Michigan Court of Appeals failed to take into account the foregoing evidence. That failure was an erroneous application of clearly established federal law. Therefore, this Court finds that habeas relief is warranted on Petitioner's claim of ineffective assistance of counsel.

Now, the question becomes what is the appropriate habeas remedy in this case. A federal habeas court has broad discretion in conditioning a judgment granting habeas relief. *Hilton v. Braunskill*, 481 U.S. 770, 775, 107 S. Ct. 2113, 95 L. Ed. 2d 724 (1987). 28 U.S.C. § 2243 authorizes federal courts to dispose of habeas matters "as law and justice require." In certain circumstances, federal courts have conditioned the issuance of a writ on the state's conducting proceedings narrower than a full retrial. *See Henderson v. Frank*, 155 F.3d 159, 168 (3d Cir. 1998). Such cases make clear that conditional writs must be tailored to ensure that all constitutional defects will be cured by the satisfaction of that condition. *Id.* Cases involving deprivations of the Sixth Amendment right to the assistance of counsel are likewise subject to

the general rule that remedies should be tailored to the injury suffered from the constitutional violation. *United States v. Morrison*, 449 U.S. 361, 364, 101 S. Ct. 665, 66 L. Ed. 2d 564 (1981).

Several federal courts have granted specific performance where ineffective assistance of counsel deprived a defendant of an opportunity to accept a plea offer. *See e.g., United States v. Blaylock*, 20 F.3d 1458, 1468-69 (9th Cir. 1994) (requiring reinstatement of plea offer as the remedy to restore defendant to his original position before the Sixth Amendment violation occurred); *Lewandowski v. Makel*, 949 F.2d 884, 887, 889 (6th Cir. 1991) (upholding district court's decision to grant specific performance of plea agreement and upholding original sentence imposed pursuant to plea bargain); *Satterlee v. Wolfenbarger*, 374 F.Supp.2d 562, 569 (E.D. Mich. 2005) (allowing specific performance where counsel was ineffective for failing to communicate government's offer to defendant).

Consequently, the Court finds that Petitioner's counsel relied on a misapprehension of the law and facts in advising him to reject the plea, and, in reviewing Petitioner's ineffective assistance of counsel claim, the Michigan Court of Appeals unreasonably applied federal precedent. Therefore, pursuant to the aforementioned cases, the Court finds that the most appropriate remedy is to grant a writ of habeas corpus ordering specific performance of Petitioner's original plea agreement, for a minimum sentence in the range of fifty-one to eighty-five months, the plea Petitioner would have accepted if counsel had been competent.

### V. CONCLUSION

For the reasons stated above, this Court concludes that Petitioner is entitled to federal

habeas relief on the claim of ineffective assistance of counsel.

## VI. ORDER

**IT IS HEREBY ORDERED** that Petitioner's application for writ of habeas corpus is conditionally granted, unless the State takes action to offer Petitioner a plea offer with a sentence agreement of fifty-one to eighty-five months, within sixty (60) days from the date of this opinion. Petitioner may apply for a writ ordering Respondent to release him from custody if the state fails to act or after all appeals are final.

        S/Denise Page Hood
        Denise Page Hood
        United States District Judge

Dated: March 26, 2009

I hereby certify that a copy of the foregoing document was served upon:

| Valerie R. Newman, Esq., | Raina L. Korbakis, AAG | Nciole Cooper Clay, APA |
|---|---|---|
| 645 Griswold, Ste. 3300 | Habeas Corpus Division | 1441 St. Antoine St. |
| Suite 3300 | P. O. Box 30217 | 12th Floor |
| Detroit, MI 48226 | Lansing, MI 48913 | Detroit, MI 48226 |

Luke Skywalker, APA
1441 St. Antoine St.,
12th Floor
Detroit, MI 48226

counsel of record on March 26, 2009, by electronic and/or ordinary mail.

        S/William F. Lewis
        Case Manager